**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LATRELL HARRIS, | ) | |
|      Plaintiff, | ) | Case Number: 1:20-cv-07296 |
| | ) | |
| v. | ) | Judge Steven C. Seeger |
| | ) | |
| GOHEALTH, LLC, | ) | |
|      Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Defendant, GOHEALTH, LLC ("GoHealth" or "Defendant"), by the undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for its Memorandum of Law in Support of Its Motion for Summary Judgment, states as follows:

**INTRODUCTION**

GoHealth is entitled to judgment as a matter of law for the following reasons: (1) Plaintiff is not a qualified individual with a disability; (2) Plaintiff has not produced any evidence establishing that GoHealth's reasons were pretext or taken in retaliation; (3) Plaintiff's certifications were insufficient to support her request for leave under the Family and Medical Leave Act ("FMLA"); and (4) Plaintiff cannot establish that GoHealth terminated her because she requested leave under FMLA. As detailed, *infra*, GoHealth is entitled to summary judgment as a matter of law.

**STANDARD OF DECISION**

A party is entitled to judgment as a matter of law if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue of material fact. Fed. R. Civ. P. 56(C). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the movant satisfies its burden to show an absence, the nonmoving party "must present

1

affirmative evidence to defeat a properly supported motion" and cannot merely allege the existence of a factual dispute, but must supply evidence sufficient to allow a jury to render a verdict in its favor. *Id.* at 256-57. While the district court must construe all facts and reasonable inferences in the nonmoving party's favor; it is not required to draw every conceivable inference, just those that are reasonable. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). Based on this standard, GoHealth is entitled to summary judgment for the following reasons.

## ARGUMENT

### I.    PLAINTIFF IS NOT A QUALIFIED INDIVIDUAL WITH A DISABILITY AND HER CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT FAIL AS A MATTER OF LAW.

The ADA prohibits employment discrimination "against a qualified individual with a disability because of [such] disability." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is someone "with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In other words, to be qualified, Harris must be able to perform the essential functions of her job at GoHealth with or without reasonable accommodation. *See* 29 C.F.R. 2613.702(f). Harris must make a *prima facie* showing that she is a member of the protected class, or a "qualified individual with a disability." *Weigel v. Target Stores*, 122 F.3d 461, 465 (7th Cir. 1997). Harris must establish "not only that she has a disability within the meaning of the ADA, but also that she is qualified for the job, i.e., that she is able 'to perform the essential functions of the job, with or without reasonable accommodation." *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Cirs.*, 601 F.3d 674, 679 (7th Cir. 2010).

When defining a job's essential functions, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description . . . for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). While courts will look to see if an employer actually requires all employees in a

2

particular position to perform the alleged essential functions, courts typically do not second-guess the employer's judgment in describing those functions if they are reasonable. *Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569-70 (7th Cir. 2019), *as amended* (Aug. 9, 2019); *see also*, 42 U.S.C. § 12111(8); 29 C.F.R. Pt. 1630, App. § 1630.2(n)). Often, whether a person is qualified is tied up with the inquiry into whether a reasonable accommodation will allow the employee to perform the essential job functions.

Here, Harris was absent from July 23 to July 26, 2019 and August 5 to August 23, 2019 for a purported medical condition. (Statement of Undisputed Material Facts ("SMF"), at ¶¶ 20, 23). During a five-week period, Harris was absent for four of those weeks. On August 7, 2019, Harris tendered a work excuse note from her physician excusing Harris from work until "further notice," i.e., an extended period with no definite endpoint. (SMF, at ¶ 24). Harris testified that at this time, she experienced symptoms from her hypertension and/or migraines rendering her unable to work. (SMF, at ¶ 23).

It is undisputed that regular, full-time attendance is an essential function of Harris' position with GoHealth. (SMF, at ¶ 7). Thus, to the extent Harris could not come to work regularly, she is not "qualified" under the ADA. *See*, *e.g.*, *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) ("The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual.").[1]

Additionally, Harris' request for an unspecific duration of time off is not a reasonable accommodation and further demonstrates Harris is not a "qualified individual with a disability." *See*, *e.g.*, *Oestringer v. Dillard Store Servs., Inc.*, 92 F. App'x 339, 342 (7th Cir. 2004) (finding an extended leave with no definite endpoint meant the employee was not qualified); *Byrne,* 328 F.3d at 381 (finding a requested accommodation to "not work[] for an extended time . . . confesses [one is] not a 'qualified

---

[1] *See also Lileikis v. SBC Ameritech, Inc.*, 84 F. App'x 645, 649 (7th Cir. 2003) (noting that part-time work is not a reasonable accommodation for a full-time job, and thus, an employee who is unable to work full-time was not "otherwise qualified"); *Byrne v. Avon Prod., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) ("Spotty attendance by itself may show lack of qualification.").

individual'"); *Nowak v. St. Rita High Sch.,* 142 F.3d 999, 1004 (7th Cir. 1998) (finding an indefinite leave of absence is not a reasonable accommodation).

Further, as a Senior Benefit Consultant, Harris sold third-party health insurance policies to consumers. (SMF, at ¶ 6). To that end, she primarily handled inbound and outbound telephone sales inquiries and guided consumers who were interested in purchasing health insurance through the selection and application process. (SMF, at ¶ 6). To perform the essential functions of this position, Harris had to be able to use the telephone and computer, type, think critically, and communicate with consumers and co-workers. (SMF, at ¶ 6). At her deposition, Desarden admitted that one of the main duties of the Benefit Advisor position was to talk on the phone. (SMF, at ¶ 6). Indeed, Harris characterized her job duties as "tak[ing] calls from Medicare recipients and offer[ing] insurance—health plans that suit their needs." (SMF, at ¶ 6). Accordingly, communicating with clients, assessing, and addressing their needs, which involves thinking, concentrating, and talking, are essential functions of Harris' job.

At her deposition, Harris testified that in July 2019, her hypertension and migraine symptoms became more severe, impacting her ability to see the computer screen, speak to customers, type, commute to work (because she was experiencing dizziness), and ultimately, as of August 7, 2019, rendered her unable to perform the functions of her job. (SMF, at ¶ 23). Thus, by Harris' admission, she was not a qualified individual with a disability as of August 7, 2019. "When employees (and/or their physicians) represent that they are 'totally disabled,' 'wholly unable to work,' or some other variant to the same effect, employers and factfinders are entitled to take them at their word; and, such representations are relevant evidence of the extent of a plaintiff's disability, upon which an employer may rely in attempting to establish that an ADA plaintiff is not a 'qualified individual with a disability.'" *Weigel*, 122 F.3d at 467-68. "[A]bsent some affirmative showing of the plaintiff's ability to perform the essential functions

4

of the position, there will be no genuine issue of material fact as to whether the plaintiff is a 'qualified individual' and the employer will be entitled to judgment as a matter of law." *Id.* at 468.

Additionally, the fact that Harris sought FMLA leave buttresses Harris' testimony that she was unable to perform the essential functions of her job and thus, was not qualified within the meaning of the ADA. Indeed, to be eligible for FMLA leave, an employee must show she is *unable* to perform her job functions, but for the ADA, the employee must show she is *able* to perform her job functions, with an accommodation. *Compare* 29 U.S.C. § 2612(a)(1)(D), *with* 42 U.S.C. §§ 12111(8), 12112(a).

Finally, the January 2020 Certification indicates that Harris experiences migraines "2 times per 1 week" which last "2 day(s) per episode." (SMF, at ¶ 69). Essentially, her healthcare provider stated that Harris needed four days off per week for her medical condition, limiting Harris's ability to work to only one day per week. Again, such a request is tantamount to one for an indefinite leave and not reasonable under the ADA, particularly in light of fact she held a full-time position and was expected to work 40 hours per week. *See Basden v. Prof'l Transp., Inc.*, 714 F. 3d 1034, 1039 (7th Cir. 2013) (granting summary judgment in favor of employer, finding that the employee's disability prevented her from coming to work regularly, thus she could not perform the essential functions of her job, and could not be a qualified individual for ADA purposes). Consequently, Harris is not a qualified individual with a disability under the ADA so her ADA claims fail as a matter of law.

II. **PLAINTIFF HAS NOT MET HER BURDEN IN ESTABLISHING THAT DEFENDANT'S REASONS FOR ITS ACTIONS WERE PRETEXT OR THAT DEFENDANT TOOK SUCH ACTIONS IN RETALIATION FOR ENGAGING IN ANY PROTECTED ACTIVITY AND THUS, PLAINTIFF'S AMERICANS WITH DISABILITIES ACT CLAIMS FAIL AS A MATTER OF LAW.**

Presuming *arguendo*, Harris is a qualified individual with a disability, her claim for disability discrimination fails because she has not introduced any evidence to show that the proffered reason for her termination—a violation of the attendance policy—was pretext. Similarly, Harris' ADA retaliation

claim also fails because Harris has not set forth any evidence to establish a causal connection between the protected activity and the adverse action.

### a. GoHealth's Decisions To Discipline and Terminate Plaintiff's Employment Were Based on Legitimate, Non-Discriminatory Reasons as Harris Violated GoHealth's Attendance Policy.

GoHealth expects consistent attendance and punctuality from its employees. (SMF, at ¶¶ 6-8). GoHealth monitors attendance and assesses points to an employee for unexcused absences. (SMF, at ¶¶ 8-9). Once an employee accumulates a certain level of points, discipline will be issued and ultimately, for employees with 50 or more points, termination will follow. (SMF, at ¶¶ 10-11).

At her deposition, Harris admitted that she was aware of GoHealth's attendance policy, including that an accumulation of points could warrant disciplinary action (i.e., 50 points is the termination threshold). (SMF, at ¶ 10). Harris admitted that she missed various days from August 2019 through January 2020, some related to her health and others not. (SMF, at ¶¶ 23, 50, 51, 55). When asked what would happen if she was out of sick days, Harris confirmed that the absence would be unexcused, thereby admitting she would accrue points. (SMF, at ¶¶ 50, 54-55). Harris further testified that she was not on an approved leave of absence at any point from September 2019 through January 2020, and thus, effectively admitted that any attendance points accrued during that period would be unexcused, resulting in the accrual of attendance points. (SMF, at ¶ 50, 54-55). Consequently, it is undisputed that Harris had unexcused absences for which she accrued attendance points, and that at the time of any discipline and her termination, Harris was above the permissible number of attendance points.

### b. Plaintiff Has Not Introduced Any Evidence Sufficient To Create a Genuine Issue of Material Fact as to Whether the Proffered Reason for Her Termination Is Pretext for Discrimination, nor Has Harris Introduced Any Evidence Establishing a Causal Connection Between Her Request for an Accommodation and Any Adverse Action.

Harris bears the burden of showing that a reasonable accommodation existed for which she is qualified. *Smith v. Dep't of Human Servs.*, No. 17-CV-3786, 2020 WL 887486, at *9 (N.D. Ill. Feb. 24,

2020) (*citing Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001)). "Identifying reasonable accommodations for a disabled employee requires both employer and employee to engage in a flexible, interactive process." *Brown v. Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 821 (7th Cir. 2017). If "the employee does not provide sufficient information to the employer to determine the necessary accommodations, the employer cannot be held liable for failing to accommodate the disabled employee." *Id.*

Harris made a request for an accommodation on July 26, 2019, so GoHealth provided Harris with documentation for her medical provider to complete and return by August 9, 2019. (SMF, at ¶ 21). Harris failed to return the paperwork by the agreed-upon date. (SMF, at ¶ 25). On August 14, 2019, when Desarden learned Harris had missed additional days, she emailed Harris indicating that the previously provided doctor's notes were not sufficient to support her request and that Harris must provide the accommodation paperwork previously provided. (SMF, at ¶ 27). Unsolicited, Desarden gave Harris an additional week, to August 19, 2019, to provide the documentation. (SMF, at ¶ 28). Desarden also reminded Harris that without the proper support, her absences would be unexcused, resulting in the continued accrual of attendance points and that as of August 14, 2019, Harris was already over the termination threshold for points. (SMF, at ¶ 30). Harris met with Desarden on August 16, 2019, and during this meeting, Desarden gave Harris an extension to August 30, 2019. (SMF, at ¶ 29).

On August 23, 2019, Harris' healthcare provider submitted a Medical Inquiry in Response to an ADA Accommodation Request Form ("MIR"). (SMF, at ¶ 31). The MIR, however, failed to contain sufficient information to allow GoHealth to evaluate Harris' request. (SMF, at ¶¶ 31-41). Indeed, the MIR listed "to be assessed" and "N/A" when asked to identify the impairment, the major life activities affected, and how the impairment interfered with Harris' ability to perform the functions of her job. (SMF, at ¶¶ 34-35). Without such information, GoHealth could not effectively evaluate Harris' need for

7

an accommodation. (SMF, at ¶ 41). Moreover, the MIR listed Harris' impairment as "probable panic attacks." (SMF, at ¶ 33). In the Complaint, Harris identified her purported disabilities as hypertension and migraine headaches. (Doc. 1, at ¶ 18). Consequently, it is unclear how the MIR could have allowed GoHealth to evaluate and provide an accommodation for an impairment of which it was not aware. Absent sufficient information to provide GoHealth with the information necessary to reasonably accommodate Harris' disability, judgment in favor of GoHealth is proper as a matter of law. *See Hoppe v. Lewis Univ.*, 692 F.3d 833, 840 (7th Cir. 2012) ("[A]n employee who fails to uphold her end of the bargain—for example, by not 'clarifying the extent of her medical restrictions'—cannot impose liability on the employer for its failure to provide a reasonable accommodation."); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1073 (7th Cir. 1998) (holding the employer could not be liable for the employee's failure to provide adequate information as to the employee's condition).

Desarden met with Harris on August 26, 2019, to discuss the MIR, and in this meeting, Harris admitted that the MIR did not accurately reflect her needs. (SMF, at ¶¶ 40-41). Desarden gave Harris until September 9, 2019 to provide supplemental information. (SMF, at ¶ 43). Harris again failed to meet this deadline. (SMF, at ¶¶ 44-45). Unsolicited, Desarden gave Harris an additional extension, to September 16, 2019, to provide the requested paperwork, and again, Harris failed to tender supplemental documentation. (SMF, at ¶ 47). As a result, GoHealth issued Harris an Attendance Counseling in accordance with its Attendance Policy and practices. (SMF, at ¶ 48).

GoHealth acted in good faith in attempting to accommodate Harris. Harris was given multiple extensions to provide the necessary paperwork but she failed to provide the necessary documentation to support her absences. Consequently, GoHealth had no choice but to issue discipline to Harris for violating its attendance policy. The discipline was not issued in retaliation for engaging in any protected activity nor made with animus towards Harris' purported disability.

Similarly, GoHealth gave Harris multiple opportunities to present documentation to support her leave requests, which she failed to do, and only then did GoHealth terminate her employment. Harris was also given the opportunity to be reinstated, but still failed to provide sufficient medical documentation. Critically, Harris cannot show any meaningful evidence that would allow a factfinder to find pretext, nor can Harris show that GoHealth's reason for terminating her (attendance) is unworthy of credence. Rather, she relies only on her uncorroborated belief that the adverse action violated the ADA, which is insufficient to create a genuine issue of material fact. *Olsen v. Marshall & Ilsley Corp.,* 267 F.3d 597, 604 (7th Cir. 2001); *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 767 (7th Cir. 2008). For these reasons, GoHealth is entitled to summary judgment on Harris' retaliation claim under the ADA.

III. **PLAINTIFF PROVIDED INCOMPLETE AND INSUFFICIENT CERTIFICATIONS TO SUPPORT HER FMLA LEAVE REQUESTS OR FAILED TO PROVIDE A CERTIFICATION AFTER SHE WAS GIVEN AN OPPORTUNITY TO CURE SO GOHEALTH HAD NO OBLIGATION TO PROVIDE HARRIS FMLA LEAVE, SO PLAINTIFF'S FMLA INTERFERENCE CLAIM FAILS AS A MATTER OF LAW.**

Under FMLA, eligible employees are entitled to twelve (12) weeks of unpaid leave per year for various reasons, including a "serious health condition" rendering the employee unable to perform his or her job. 29 U.S.C. § 2612(a)(1)(D). FMLA prohibits an employer from interfering with an employee's attempt to exercise the rights established by FMLA. 29 U.S.C. § 2615(a).

To determine if an employee is qualified for protected leave, FMLA provides that an employer may require that leave requested under Section 2612(a)(1)(D) "be supported by a certification issued by [a] health care provider of the eligible employee." 29 U.S.C. § 2613(a); *see also* 29 C.F.R. § 825.305(a). At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification. 29 C.F.R. § 825.305. When an employee fails to return the certification entirely, such failure "constitutes a failure to provide certification." 29 C.F.R. § 825.305(c). In such instances, an "employer may deny the taking of FMLA leave in accordance with [Regulation] 825.313." 29 C.F.R. § 825.305(d).

Finally, FMLA's implementing regulations provide that a certification is complete and sufficient if it states the date upon which the serious health condition began, the condition's probable duration, the appropriate medical facts regarding the condition within the health care provider's knowledge, and a statement that the employee is unable to perform his position's duties. 29 U.S.C. § 2613(b). If one or more of the applicable entries is not completed, the certification is considered incomplete, and if entries are complete but the information is "vague, ambiguous, or non-responsive," the certification is insufficient. 29 C.F.R. § 825.305. The implementing regulations also provide that a "certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide certification." 29 CFR § 825.305(c).

### A. GoHealth Notified Harris Both in Writing and Orally that Her Request for FMLA Leave Must Be Supported by a Certification.

As set forth in GoHealth's FMLA Policy, GoHealth reserved the right to request a medical certification to support a FMLA leave request. (SMF, at ¶ 15). Further, when Harris submitted a request for FMLA leave on August 16, 2019, Desarden provided Harris with the certification that her provider needed to complete and emailed her, informing her of the need to return the certification by August 30, 2019. (SMF, at ¶ 30). In total, Desarden attempted on no less than five occasions over the course of several months to obtain supporting medical documentation from Harris. (SMF, at ¶¶ 27-30, 40-46, 52-54, 57-58, 61-62). Moreover, Harris knew she needed to provide the certification because she admitted to receiving Desarden's emails and on two occasions, November 27, 2019 and January 10, 2020, and asked Desarden for a new copy of the form. (SMF, at ¶¶ 53-55, 58-59, 61). Accordingly, it is undisputed that GoHealth notified Harris multiple times in writing that Harris needed to provide a certification to support her request for FMLA leave.

**B. GoHealth Notified Harris in Writing and Orally that Her Failure To Provide a Complete and Sufficient Certification Would Result in Disciplinary Action in Accordance with GoHealth's Attendance Policy.**

Harris requested FMLA leave on August 16, 2019. (SMF, at ¶ 29). Desarden sent Harris a follow-up email on August 16, 2019, confirming that Harris' "absences will be considered unexcused until completed forms are returned and approved." (SMF, at ¶ 30). After Desarden met with Harris on August 26, 2019, to discuss the deficiencies with Harris' August Certification, Desarden again emailed Harris explicitly stating, "You are currently above the attendance threshold under the GoHealth attendance policy. Failure to provide documentation may result in disciplinary action up to termination." (SMF, at ¶ 42). On September 9, 2019, Desarden emailed Harris again stating that Harris' "[f]ailure to return paperwork will result in disciplinary action under the GoHealth attendance policy." (SMF, at ¶¶ 44-46).

After Harris called out citing FMLA leave, even though she knew she was not approved for such leave, Desarden verbally reminded Harris that until she returned and GoHealth approved a certification, she would continue to accrue attendance points for her absences. (SMF, at ¶¶ 51, 53). Then, on January 10, 2020, after Harris asked Desarden for a new copy of the FMLA form, Desarden emailed Harris the form and again reminded Harris that she would "continue to accumulate points for all of [her] absences at this point as [her] FMLA is not approved." (SMF, at ¶ 58).

Further, Harris admitted that she was aware of GoHealth's attendance policy, that the accrual of 50 or more attendance points would result in termination, and that her attendance points were over the termination threshold since at least September 17, 2019. (SMF, at ¶¶ 48-49). Harris admitted to receiving the email correspondence from Desarden on August 16, 2019, August 26, 2019, September 9, 2019, and January 10, 2020, which informed Harris that her absences would be considered unexcused and she would continue to accrue attendance points until complete, supporting paperwork was provided. (SMF, at ¶¶ 30, 58). Finally, Harris admitted that she understood that she could be disciplined and terminated

11

for failing to return the FMLA certification. (SMF, at ¶¶ 53, 55). Thus, it is undisputed that GoHealth notified Harris on no less than four occasions following her request for FMLA leave that discipline and/or termination would occur if Harris failed to provide a certification, and Harris was aware of the consequences of accruing attendance points.

### C. Harris Was Not Eligible for FMLA Leave Until August 27, 2019, so Any Discipline Issued for Absences Occurring Prior to that Date Cannot Constitute Interference Under the FMLA.

To be eligible for FMLA leave, the employee must have worked for their employer for at least 12 months. 29 U.S.C. § 2611. For Harris, August 27, 2019, was the one-year anniversary of her start date with GoHealth. (SMF, at ¶ 5). Since Harris was not eligible for FMLA leave, GoHealth's issuance of discipline for any pre-August 27, 2019 absences cannot constitute interference as Harris was not yet eligible for FMLA leave. *See Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (noting eligibility as a *prima facie* element of an interference claim). Consequently, to the extent Harris' FMLA claim is based upon GoHealth's failure to provide FMLA leave for her July or pre-August 27, 2019 absences, her claim fails as a matter of law.

### D. The August Certification Is Incomplete and Insufficient.

Employers are entitled to information sufficient to fully understand the reasons for an employee's leave. Here, Harris failed to provide the most basic information in support of her FMLA leave request. On August 23, 2019, GoHealth received the August Certification from Harris' healthcare provider, Dr. Ranjit Sigamony. (SMF, at ¶ 31). The August Certification listed the approximate date the condition commenced as "Aug. 2019," the probable duration of the condition as "to be assessed," that Harris would need to have treatment at least twice per year due to the condition, that medication was prescribed, and that Harris was referred to "psychology and psychiatry." (SMF, at ¶ 37). When asked whether Harris was able to perform any of her job functions due to the condition, Dr. Sigamony wrote, "N/A." (SMF, at ¶ 38). Dr. Sigamony also indicated in the August Certification that the condition would cause episodic

12

flare-ups periodically preventing Harris from performing her job functions, "3 times per one month," and while he indicated Harris would need to be absent from work due to the flare-ups, he failed to provide an explanation as the form requested. (SMF, at ¶ 39).

To the extent this Certification is meant to support absences occurring on or after August 27, 2019, it is incomplete and insufficient, so Harris is deemed to have failed to provide certification. First, it fails to identify a probable duration. (SMF, at ¶ 37). Second, the provider included no medical facts regarding the condition. (SMF, at ¶¶ 33-37, 39). Third, there is no indication as to whether Harris' purported impairment renders her unable to perform any of her job functions due to the condition. (SMF, at ¶ 38). Fourth, it states Harris may experience flare-ups three times per month but it does not include the duration of each episode. (SMF, at ¶ 39). Because the August Certification failed to contain adequate information to allow GoHealth to evaluate Harris' entitlement to FMLA leave, it is insufficient and incomplete as a matter of law. *See* 29 U.S.C. § 2613(b); 29 C.F.R. § 825.305; *Hobbs v. Sloan Valve Co.*, No. 1:14-CV-03482, 2015 WL 4231743, at *8 (N.D. Ill. July 10, 2015) (granting summary judgment in employer's favor finding that the answers to certifications insufficient as the lack of answers to certain questions were not mere technical deficiencies).

### E. Despite Being Offered a Reasonable Opportunity To Cure the Deficiencies, Harried Failed To Provide a New Certification To Cover Any Absences Occurring on or After August 27, 2019.

Desarden met with Harris on August 26, 2019 to discuss the deficiencies and gave her until September 9, 2019 to provide a new certification. (SMF, at ¶¶ 40, 43). When Harris failed to return the certification by the agreed-upon deadline, Desarden gave Harris an extension to September 16, 2019. (SMF, at ¶ 45). Harris, however, failed to provide any new certification. (SMF, at ¶ 47). Thus, GoHealth satisfied its obligation to provide Harris with a reasonable opportunity to cure the deficiencies. 29 C.F.R. § 825.305(d). Harris was ultimately given thirty days, double the minimum period, to provide the certification before she was issued the attendance counseling. *See* 29 CRF § 825.313. Consequently, the

13

issuance of the Attendance Counseling in accordance with its Attendance Policy and standard practices does not constitute FMLA interference. *See*, *e.g.*, *Ridings*, 537 F.3d at 770 (enforcement of attendance policy when the employee fails to demonstrate entitlement is not unlawful).

### F. Harris Failed To Provide a Certification To Support Her Second Request for FMLA Leave, and GoHealth's Decision To Terminate Plaintiff Does Not Constitute Interference Under the FMLA.

On November 21, 2019, despite Harris' awareness that she did not have an approved leave, she called out from work citing "FMLA leave." (SMF, at ¶ 51). Thereafter, on November 27, 2019, when Desarden learned of the absence, she contacted Harris and requested she submit a certification within the following two weeks, and provided Harris with a copy of the certification. (SMF, at ¶ 52). Harris failed to provide Desarden with a certification within the time period requested. (SMF, at ¶ 53).

Then, on January 9, 2020, Harris asked Desarden for a new copy of the FMLA form, which Desarden provided the following day. (SMF, at ¶¶ 56-57). Harris asked for another extension to January 29, the day of her doctor's appointment, which Desarden granted. (SMF, at ¶ 59). However, Harris failed to return the certification by January 29 (i.e., sixty-three days after Desarden's November 27, 2019 request for a certification and twenty days after Harris requested new copies of the paperwork on January 9, 2020). (SMF, at ¶ 60).

Again, Harris failed to provide a certification demonstrating her entitlement to FMLA leave. As a result, GoHealth terminated Harris' employment on January 30, 2020, in accordance with its Attendance Policy as Harris had accrued 167 attendance points, well over GoHealth's fifty-point termination threshold. (SMF, at ¶ 60). Accordingly, as a matter of law, GoHealth's decision to terminate Harris for attendance issues after she failed to provide a certification supporting her request for leave does not, as a matter of law, constitute interference under the FMLA. *See*, *e.g.*, *Ridings*, 537 F.3d at 770 (The company's policies permitted it to terminate the employee for absenteeism because she did not demonstrate FMLA entitlement; therefore, her termination was not unlawful).

IV.   **PLAINTIFF HAS NOT MET HER BURDEN IN ESTABLISHING THAT DEFENDANT TERMINATED PLAINTIFF BECAUSE SHE REQUESTED FMLA LEAVE.**

Retaliation under the FMLA requires proof of a retaliatory motive. *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 884-85 (7th Cir. 2005). Here, such proof is completely lacking.

As explained above, GoHealth gave Harris many opportunities to provide the necessary documentation supporting her leave request, routinely reminding her that a failure to do so would result in disciplinary action, up to termination. From August 16, 2019, when Harris initially requested FMLA documentation, GoHealth reminded Harris three times of the consequences and gave her thirty days to comply before it issued an attendance counseling. From November 21, 2019, when Harris called out citing FMLA leave, GoHealth twice reminded Harris of the consequences and gave her sixty-three days to comply before terminating her employment. Despite the five reminders of the consequences and multiple extensions, cumulatively spanning ninety-three days, Harris failed to comply. (SMF, at ¶ 60).

Moreover, even in the face of such failure and following Harris' termination, GoHealth was willing to consider reinstatement if Harris could provide documentation tying her unexcused absences/attendance points to her purported medical condition. (SMF, at ¶¶ 61-62). Again, Harris failed to provide such paperwork, so the termination stood. *Ridings*, 537 F.3d at 772 (rejecting employee's FMLA retaliation claim following employee's termination in accordance with the FMLA and its employment policies, after giving her repeated opportunities to provide the information it had requested). As such, as a matter of law, GoHealth did not retaliate against Harris for seeking FMLA leave. GoHealth cannot be deemed to have retaliated against Harris by asking her to fulfill her obligations under the FMLA. *Id*.

WHEREFORE, Defendant, GOHEALTH, LLC, respectfully requests that this Court enter judgment against Plaintiff, Latrell Harris, and in favor of Defendant, GOHEALTH LLC, and for any other relief this Court deems proper.

Respectfully submitted,

GOHEALTH, LLC

By: /s/ Jonathan L. Federman
*One of the Attorneys for Defendant*

Thomas G. Cronin, ARDC No. 6282701
Katherine P. Decker, ARDC No. 6323799
Jonathan L. Federman, ARDC No. 6312779
GORDON & REES SCULLY MANSUKHANI, LLP
One North Franklin, Suite 800
Chicago, IL 60606
Ph. 312-565-1400
Fax. 312-565-6511
tcronoin@grsm.com
kdecker@grsm.com
jfederman@grsm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON March 14, 2022, I electronically filed the foregoing paper, Defendant's Motion for Summary Judgment, with the Clerk of the Court Using the ECF system which will send notification of such filing to the following:

Gary Martoccio
Spielberger Law Group
4890 W. Kennedy Blvd., Suite 950
Tampa, FL 33606
T: (800) 965-1570
F: (866) 580-7499
Gary.Martoccio@spielbergerlawgroup.com
*Attorneys for Plaintiff*


/s/ Jonathan L. Federman